Submitted January 28, affirmed April 13, petition for review denied
July 28, 2011 (350 Or 571)

## STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

## IKEMEFULA UGONNA OFOEGBU,
*Defendant-Appellant.*

Lincoln County Circuit Court
084898; A142344

255 P3d 538

Peter Gartlan, Chief Defender, and Meredith Allen, Senior Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

John R. Kroger, Attorney General, David B. Thompson, Interim Solicitor General, and Linda Wicks, Assistant Attorney General, filed the brief for respondent.

Before Haselton, Presiding Judge, and Brewer, Chief Judge, and Armstrong, Judge.

BREWER, C. J.

**BREWER, C. J.**

Defendant appeals his conviction, following a bench trial, for first-degree sexual abuse. ORS 163.427. In a single assignment of error, defendant asserts that the trial court erred in admitting evidence that defendant had previously committed a sex offense against another victim. We conclude that the trial court did not err in admitting the challenged evidence because it was relevant to show that defendant intended to commit the charged offense. Accordingly, we affirm.

Defendant was tried a second time for the charged offense after a jury was unable to reach a verdict on that charge in a previous trial.[1] The parties agreed that the court could retry defendant on the same evidence adduced in the first trial, subject to one exception that we will address below. In his opening statement, defendant's attorney stated that the evidence would show that defendant's conduct was committed for the purpose of robbing, not sexually assaulting, the victim. The state presented evidence that defendant entered a motel lobby in an area of Lincoln City where there are several Korean-owned motels. Defendant asked the woman who was alone at the front desk—the victim—about the cost of a room. When she answered, defendant said that the price was too high. The victim told defendant that there was a less expensive motel next door, which she and her husband also owned. Defendant said that that price also was too high. He then lowered his voice and said something about sex. The victim screamed, and defendant fled.

About 20 or 30 minutes later, defendant returned. He did not say anything to the victim but, instead, suddenly charged behind the front desk, where the victim was working. Defendant punched the victim in the head three or four times, and he tried to kiss her. Defendant put his arm around the victim's neck, and he grabbed her crotch. Defendant also reached through the victim's legs to grab her buttocks. When the victim screamed, defendant covered her mouth with his

---

[1] Defendant was originally tried for three offenses arising from the same incident. The jury convicted him of one of the charges, acquitted him of another and, as discussed, was unable to reach a verdict on the instant count. Only the first-degree sexual abuse charge is at issue in this appeal.

hand. He then pushed her down and lay on top of her on the floor behind the front desk.

A hotel guest heard the commotion and came out of his room to investigate. The guest saw defendant bent over the victim, and he saw that one of defendant's hands was on or near the victim's legs. Defendant ran away. Defendant did not take anything from the victim or the motel, nor did he demand money or look into the money drawer behind the front desk. When the police apprehended defendant about an hour later, an officer observed that the fly on defendant's pants was open. Defendant asked the officers if his "twin" had gotten into trouble. Defendant said that his "twin," whose name was Edward, was dressed identically to him. An officer asked whether anyone could verify that defendant had a twin brother, and defendant told the officer that none of his family members could be reached.

The victim testified at the first trial. She did not speak English well, and she needed an interpreter in order to testify and to communicate effectively with police investigators.

On the second day of trial, the state filed a motion to introduce uncharged misconduct evidence in rebuttal if defendant were to testify. The state's proffer showed that, seven years before the charged incident, defendant had groped a woman on a public street in California. In the earlier incident, defendant had "found a non-[E]nglish speaking woman [who] was a stranger." Defendant followed the woman on his bicycle from a store. He rode his bike up to her and grabbed her thigh and buttocks. Defendant continued past the woman and stopped to watch her as she walked toward him. The woman changed direction, going to a pay phone to call the police. Defendant rode over to the woman and asked her if she was calling the police. When she said that she was, defendant pushed her, grabbed her tank top and bra, pulled her toward him, and then punched her in the face.

Defendant was apprehended by the police shortly after the incident. He told the officer that he had accidentally run into the woman with his bicycle. A receipt in defendant's possession showed that he had been in the same store as the

victim at the same time. The woman was a stranger to defendant. Defendant was subsequently charged with sexual battery under California law.[2]

Despite his attorney's assertion in his opening statement that defendant had intended to rob, not sexually assault, the victim, after the state filed its motion to introduce the prior crime evidence, defendant chose not to testify in his own defense. Because defendant did not testify, the state did not formally offer the challenged evidence in the first trial.

As discussed, the jury could not reach a verdict on the instant charge in the first trial, and the state elected to retry defendant on that charge. Before the second trial, the state renewed its motion to admit evidence of the previous sexual assault. The state argued that the evidence was admissible to show defendant's intent in the incident charged in this case. The trial court held a hearing to determine its admissibility, after which the court concluded that the evidence was relevant to show defendant's intent and that it satisfied the legal test for admitting such evidence. After the court concluded that the evidence was admissible, defendant stipulated that the evidence could be admitted through a redacted police report. Defendant waived his right to a jury trial, and, once again, he argued that when he attacked the victim, he intended to rob her, not sexually assault her. The trial court convicted him of the charged offense. On appeal, defendant assigns error to the admission of the evidence of the previous sexual assault.

OEC 404(3) provides:

"Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive,

---

[2] Sexual battery is defined under California Penal Code section 243.4(e)(1), in pertinent part, as follows:

"Any person who touches an intimate part of another person, if the touching is against the will of the person touched, and is for the specific purpose of sexual arousal, sexual gratification, or sexual abuse, is guilty of misdemeanor sexual battery."

The record does not indicate whether defendant was convicted of that offense.

opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

In *State v. Johns*, 301 Or 535, 544, 725 P2d 312 (1986), the Supreme Court observed that OEC 404(3) is a rule of inclusion, permitting the introduction of other crimes evidence as long as the evidence is relevant for a noncharacter purpose. However, evidence of other crimes may not be introduced solely to prove that, because of the defendant's character, it is more probable that the defendant committed the crime for which he is on trial. *State v. Johnson*, 313 Or 189, 194, 832 P2d 443 (1992). In *Johns*, the court concluded that, to properly admit other crimes evidence as proof of intent, a court must consider the following six questions:

"(1)  Does the present charged act require proof of intent?

"(2)  Did the prior act require intent?

"(3)  Was the victim in the prior act the same victim or in the same class as the victim in the present case?

"(4)  Was the type of prior act the same or similar to the acts involved in the charged crime?

"(5)  Were the physical elements of the prior act and the present act similar?

"(6)  If these criteria are met, is the probative value of the prior act evidence substantially outweighed by the danger of unfair prejudice, confusion of issues or misleading the jury, undue delay or presentation of cumulative evidence?"

301 Or at 555-56. The first five questions relate to the issue of relevance. *State v. Pratt*, 309 Or 205, 211, 785 P2d 350 (1990). In applying the *Johns* test, the court has stated that, only if the answer to each of the first five questions is yes—leading to the conclusion that the evidence is relevant for a noncharacter purpose—should the court proceed to the sixth question and weigh the probative value and the prejudicial effect of the evidence under OEC 403. *Id.*

In determining whether the physical elements of the prior acts and the present acts are sufficiently similar to warrant their admission into evidence, the Supreme Court has observed:

"The circumstances of each crime as a whole must be compared. First, the trial judge must find that there are significant similarities in the physical elements of the two crimes. If that test is met, then the trial judge must consider the differences between the physical elements of the two crimes. The differences may be minimal—for example, the offender may have used different words to indicate his intent. On the other hand, the differences may be so great that they overwhelm the similarities. The point is: The dissimilarities must be as fully considered as the similarities in answering this question.

"Determining what constitutes a significant similarity is a matter to be decided on a case-by-case basis. Some similarities are so common as to be trivial (for example, the offender spoke English during both crimes) while others may be so unusual as to be significant even standing alone (for example, the offender spoke a foreign language when he intended to rape, but spoke English otherwise). Most often the significance of the similarities will arise out of their combination."

*Pratt*, 309 Or at 214.

In this case, defendant argues that the proffered evidence did not satisfy the third (class of victim), fourth (type of act), and fifth (physical elements) criteria of the *Johns* test and, therefore, the trial court erred in admitting it. With respect to the class of victim criterion, defendant argues that the "victims of the two incidents were different in relation to defendant; the victim of the California incident was walking down the street with other people in the vicinity, but here, the victim was alone behind the front desk of a motel."

Defendant does not separately discuss the type of act and physical element criteria. However, defendant emphasizes that the first assault took place on a street, whereas the current charge stems from a crime committed in an "isolated, indoors location." In addition, defendant observes that he was on a bicycle in the first incident and on foot, not wearing shoes, in the charged incident. He also notes that he put his hand over the victim's mouth in this case and tried to kiss her, but did neither of those things in the first incident. Defendant also points out that he took the victim's necklace in the first incident but did not take anything in this case.

Finally, defendant notes that the first incident was remote in time from the charged incident, and it occurred when he was only 15 years old. Defendant asserts that his intentions as a minor "should have little bearing on his intentions as a full-grown adult, especially without intervening events to establish a continuity of purpose and intent in his contacts with women."

We conclude that the trial court did not err in admitting the challenged evidence. With respect to the class of victim criterion, defendant's focus on particular differences between the women is misplaced. In the aggregate, there were sufficient similarities between the women to support the state's theory that defendant had a sexual intent and to rebut defendant's contrary theory of the case. Not only were both victims females who were strangers to defendant, both also had difficulty communicating in English, thus making it less likely that they would be able to effectively complain to authorities. The fact that defendant briefly spoke to both women before he attacked them showed that he had an opportunity to perceive their limited abilities to speak English. *Cf. Pratt*, 309 Or at 214.

With respect to the type of act criterion, the two incidents each stemmed from defendant's nonconsensual touching of a female stranger. The prior conduct constituted sexual battery under California law, a crime whose elements are comparable to first-degree sexual abuse under ORS 163.427, which also requires the nonconsensual touching of the intimate parts of another for the purpose of sexual gratification.[3]

Moreover, the physical elements of defendant's conduct in each incident were similar. In both instances, defendant groped the women's buttocks and other intimate body parts on top of their clothing. In both incidents, defendant had initial contact with the victims and then returned to

---

[3] ORS 163.427 provides, in part:

"A person commits the crime of sexual abuse in the first degree when that person:

"(a) Subjects another person to sexual contact and:

"* * * * *

"(B) The victim is subjected to forcible compulsion by the actor[.]"

engage in further, more serious and violent sexual conduct, which included striking the victims' heads and forcibly restraining them. Even though the previous incident took place on a public street, and the charged incident occurred indoors, both were brazen attacks that occurred in locations open to the public. In fact, defendant's assault in this case was witnessed in part and interrupted by a motel guest who heard the commotion caused by the attack.

Contrary to defendant's argument that, to be relevant to show intent, the prior conduct must be more similar than the comparison in this case, "when prior crime evidence is to be admitted to prove intent, [the Supreme Court] has indicated that a high degree of similarity is helpful but is not essential, and that a distinctive methodology is entirely irrelevant. *See Johns*, 301 Or at 555-56 (so stating)." *State v. Johnson*, 340 Or 319, 340, 131 P3d 173 (2006). Particularly in light of defendant's defense theory that the purpose of his conduct was robbery, not sexual gratification, evidence of the prior incident was sufficiently similar to be probative of his sexual intent.

In that regard, this case bears a resemblance to *State v. Cockrell*, 174 Or App 442, 26 P3d 169, *rev den*, 332 Or 656 (2001), where the defendant was charged with two counts of sexual abuse. The first was based on an incident in which he lifted his 11-year-old niece in the air while "roughhous[ing]" with her in front of a television and, while doing so, rubbed her crotch area for several seconds. The second incident, involving the same victim, occurred while she was playing the piano, and he touched her upper thigh for approximately five minutes. *Id.* at 444. The state introduced evidence of three earlier sex offense convictions. One involved the 12-year-old daughter of a woman the defendant was dating. He entered her bedroom "while she was sleeping, put his hand under her shirt, touched her breasts, moved his hand down inside her shorts, and penetrated her vagina with his fingers." *Id.* at 446. He also "engaged in the same sort of touching while he and [the victim] sat on a couch watching television." *Id.* In yet another incident, the defendant abused another victim when he interrupted her sleep by touching

her breasts under her shirt and bra. *Id*. We held that the earlier incidents were admissible to rebut the defendant's argument that the charged conduct occurred with no sexual intent. We explained:

> "Each touching occurred while the victims were involved in nonsexual activities. The surrounding physical circumstances of the incidents are also similar. There were no alcohol, drugs, violence, coercion or the use of weapons involved in any of the incidents. The types of touching involved are similar—in each case, defendant used his hand to touch the sexual or intimate parts of the victims. Finally, there is the similarity in each of defendant's responses after being confronted about his conduct."

*Id*. at 449.

Likewise, in *Johns*, the Supreme Court held that evidence of the defendant's previous assault with a firearm on his former wife was relevant to prove his intent and counter the defendant's claim that the shooting of his second wife was accidental. *Johns*, 301 Or at 551. And, in *State v. Wert*, 144 Or App 581, 927 P2d 1103 (1996), *rev den*, 325 Or 369 (1997), we held that evidence of the defendant's touching of another victim was admissible to show his intent, and absence of mistake, with respect to the charged offense.

The trial court properly concluded that the challenged evidence was relevant and admissible to show defendant's sexual purpose in subjecting the victim in this case to forcibly compelled sexual contact. The evidence satisfied the three questioned *Johns* criteria: the victims of both attacks were in the same class; the types of act were the same or similar; and the physical elements of the acts were similar.[4]

Affirmed.

---

[4] We reject without discussion defendant's unpreserved argument that admission of the challenged evidence violated his due process rights.